STATE, EX REL. JOHN J. MULLIGAN, v. EDWARD J. CAV-
ANAGH.

| 46 | 45 |
| 58 | 358 |
| 46 | 45 |
| 70 | 537 |

Two freeholders were, by the law of March 23d, 1875, (*Pamph. L.*, p. 324,) to be elected from each assembly district in the county of Hudson, and in the eighth district one was to be resident in the western and the

other in the eastern part. The general act to re-apportion the assembly districts of the state, passed March 21st, 1881, (*Pamph. L., p.* 146, ₰ 9,) which, among others, divided the eighth assembly district and set off the eastern and western parts, separated with other territory into two districts, repealed by implication the special privilege of a resident freeholder in the separated portions. Freeholders in the new districts must be chosen at large.

On information in *quo warranto* for defendant to answer to the state by what warrant he claims to hold and enjoy the office of chosen freeholder of the county of Hudson, from the eighth assembly district.

Argued at November Term, 1883, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the relator, *E. L. Price.*

For the defendant, *M. T. Newbold.*

The opinion of the court was delivered by

SCUDDER, J. On demurrer to the information filed with the leave of the court, the construction of the acts of the legislature under which the relator claims title to the office of chosen freeholder from the eighth assembly district of Hudson county is the important question presented for our consideration. The demurrer pleads that the relator has, by the facts stated in the information, disproved his right to the office. It appears that the board of chosen freeholders of the county of Hudson are constituted, by the act entitled "An act to re-organize the board of chosen freeholders of the county of Hudson," approved March 23d, 1875, (*Pamph. L., p.* 324,) and consists of two chosen freeholders from each assembly district of the county of Hudson.

At the time this act was passed the eighth assembly district was composed of all that part of the county of Hudson which was not comprised within the limits of any other of said (seven) assembly districts, and included the townships of Kearny,

North Bergen and Union, and the towns of Harrison, West Hoboken, Union, Weehawken and Guttenberg, lying north and east of Jersey City and Hoboken.

In the ninth section of the above statute of 1875, it is enacted " that in the eighth assembly district one of said members from said district shall be a resident of that portion of the district lying between the Hackensack and Passaic rivers, and the other one of said two members from said district shall reside in the remaining portion of said district." This gave the township of Kearny and the town of Harrison one member of the board of freeholders, while the district remained unchanged. But by the general act to re-apportion the assembly districts, of March 21st, 1881, (*Pamph. L., p.* 146, § 9,) the county of Hudson was divided into ten districts. The eighth district was constituted from a part of Jersey City, Kearny township and the town of Harrison. The remaining portion of the former eighth district was incorporated in a tenth district.

At the charter and township election, held April 10th, 1883, there were chosen by the electors of the eighth assembly district two chosen freeholders. At this election John Lillis, of the city of Jersey City, received thirteen hundred and eighty-four votes; Edward J. Cavanagh, the defendant, of the city of Jersey City, received thirteen hundred and fifty-five votes; John J. Mulligan, the relator, of the town of Harrison, received twelve hundred and seventy-four votes; James Johnson, of the township of Kearny, received twelve hundred and thirty-seven votes; Edward Burke, of the city of Jersey City, received fifty-six votes, and all other persons four votes. The board of county canvassers declared that John Lillis and Edward J. Cavanagh, having received the highest number of votes for chosen freeholders in the eighth assembly district, were elected. They gave bond, were sworn, and entered on the duties of chosen freeholders. It is conceded that John Lillis, having received the highest number of votes cast at the election, is duly elected, but as he resides in that part of Jersey City which is included in the eighth assembly district, it

is contended that Edward J. Cavanagh, who had the next highest number of votes, was disqualified because he also lives in the same portion of Jersey City, and not in that part of the district lying between the Hackensack and Passaic rivers, which includes the township of Kearny and the town of Harrison in the present eighth district. As the relator resides in this portion of the district, and has the next highest number of votes, he claims that he was qualified and duly elected.

The question at issue between these two rival contestants for the office of chosen freeholder is whether the act of 1881, apportioning the several assembly districts of the state, repealed by implication the provision in the special act reorganizing the board of chosen freeholders of Hudson county, by which one of the two freeholders must reside between the Hackensack and Passaic rivers. The effect of the act of apportionment was to change and abolish all legislative districts wherever inconsistent with the boundaries therein prescribed. This apportionment was made pursuant to article 4, section 3, of the constitution, requiring that the members of the general assembly shall be apportioned among the said counties, as nearly as may be, according to the number of their inhabitants, and that such apportionment shall be made by the legislature at its first session after the next and every subsequent enumeration or census. In order to effect this purpose the state was redistricted by the law of 1881, and the county of Hudson was changed into ten districts instead of eight because of the increase of population since the last census. The eighth district was dismembered; part of it remained in a new district called the eighth, and part was put into another district called the tenth. New territory, taken from a part of Jersey City, was added to the former, and together these parts were called the eighth district, but it is obvious that it had no more claim to this number than the other portion of the district which became part of the tenth, and the required change was made with reference to an exact apportionment of the population rather than any existing privileges acquired by prior legislation. There is no reason why these two portions of Hudson

Mulligan v. Cavanagh.

county included in the former eighth assembly district should continue to have special privileges in the selection of chosen freeholders if attached to other districts, when their population might not bear the same proportion to the newly-added territory as had previously existed. The act of 1875 must be construed to apply to the eighth district as it then existed, and not to another district which includes a part of the same territory, and might be called as well by any other name or number. This act is specific in its terms and applies its provisions to "said district," while the general act of apportionment of 1881 is general, and by its very nature and terms prescribes the same rule for all assembly districts created by its provisions. It is necessarily exclusive, and repugnant to the former act by providing a complete scheme for all legislative districts in the state, with boundaries and people changed in many cases. This is held to be decisive evidence of an intention to prescribe the only law on the subject which shall be obligatory. *Roche* v. *Mayor of Jersey City*, 11 *Vroom* 257; *Industrial School District* v. *Whitehead,* 2 *Beas.* 290; *State, Morris and Essex R. R. Co., pros.,* v. *Commissioner of Railroad Taxation,* 8 *Vroom* 228.

It cannot be intended that this legislative district, or any portion of it, shall still have a distinct existence for the purpose of securing a chosen freeholder after the district has been entirely altered for the purpose of electing a member of the general assembly. Such incongruity in the different parts of separate legislative districts would lead to confusion in elections, and results obviously not contemplated by the legislature. It is not probable that an abolished legislative district was to be kept in existence for the sole purpose of fixing the residence of the freeholders. When the eighth assembly district, as before existing, was abolished, the privilege of having a resident freeholder in the eastern and western portions of the territory respectively went with it, and the new district must choose its freeholders at large, as other districts do. As the respondent had a larger number of votes than the relator in the eighth district, as constituted at the time of the election

for chosen freeholder in 1883, he is entitled to the office, and judgment will be rendered for him on the demurrer to the information.